IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

LUISA S. GUERRERO,            )    CIVIL NO. 07-00612 HG-LEK
                             )
         Plaintiff,           )
                             )
    vs.                       )
                             )
MICHAEL J. ASTRUE,            )
COMMISSIONER OF SOCIAL        )
SECURITY,                     )
                             )
         Defendant.           )
_____ )


**FINDINGS AND RECOMMENDATION TO GRANT
PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION**

Before the Court, pursuant to a referral by Chief
United States District Judge Helen Gillmor, is Plaintiff Luisa S.
Leon Guerrero's ("Plaintiff") Motion for Summary Adjudication
("Motion"), filed on September 26, 2008.  Defendant Michael J.
Astrue, Commissioner of Social Security ("Defendant") filed his
Answering Brief on November 25, 2008, and Plaintiff filed her
Reply on December 5, 2008.  The Court finds this matter suitable
for disposition without a hearing pursuant to Rule LR7.2(d) of
the Local Rules of Practice of the United States District Court
for the District of Hawaii ("Local Rules").  After careful
consideration of the Motion, supporting and opposing documents,
and the relevant legal authority, this Court HEREBY FINDS AND
RECOMMENDS that Plaintiff's Motion be GRANTED for the reasons set
forth below.

**BACKGROUND**

Plaintiff filed her Complaint on December 19, 2007, seeking judicial review of the Commissioner's decision that Plaintiff was not entitled to social security disability insurance benefits.

Plaintiff states that she became disabled on March 3, 1992 due to an aggressive brain tumor, which caused her to lose her vision in her left eye and compromised her vision in her right eye, glaucoma, depression, panhypopituitarism, and thyroid related orbitopathy. She worked as a contact lens mold setter for seventeen years until 1992 when she became unable to work because of her vision problems. Her date last insured ("DLI") was December 31, 1997. Plaintiff completed two years of college. Plaintiff initially filed an application for disability benefits on November 27, 2001. The Social Security Administration ("SSA") denied the application initially and on reconsideration. Plaintiff filed another application for disability benefits on January 4, 2005, again alleging an onset date of March 3, 1992. The SSA denied the application initially and on reconsideration. Plaintiff requested a hearing, which occurred on March 29, 2007 before Administrative Law Judge ("ALJ") Henry M. Tai. Plaintiff was represented by Dina Rogers, a non-attorney. [Administrative Record ("AR") at 12, 19.]

The ALJ issued his decision on May 17, 2007. In

determining whether Plaintiff was disabled, the ALJ applied the five-step analysis described in 20 C.F.R. § 404.1520.  First, the ALJ found that Plaintiff did not engage in substantial, gainful activity from her alleged onset date to her DLI.  Second, the ALJ noted that Plaintiff had severe impairments of skull based meningioma and optic atrophy of the left eye.  Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments through her DLI that met or equaled a listed impairment, which would preclude all work.  [AR at 14.]  The ALJ noted that Plaintiff had occasional postural limitations, such as balancing, stooping, kneeling, crawling, and climbing, and she had decreased depth perception and visual field.  The ALJ, however, found that Plaintiff had the residual functional capacity ("RFC") to do light work, *i.e.* work that involved significant walking and/or standing with frequent lifting and/or carrying of ten pounds, and occasionally up to twenty pounds. [AR at 15.]  In assessing Plaintiff's RFC, the ALJ found that Plaintiff's testimony about the severity of her symptoms was not entirely credible.  [AR at 16.]  The ALJ stated that Plaintiff's meningioma was stable after her surgeries in 1988 and 1989 and that she was able to work for several years afterward.  Up to Plaintiff's DLI, there was no significant change in her condition and she was maintained on medication.  [AR at 17.]  Her primary restriction was her vision impairments.  The ALJ emphasized that

3

none of Plaintiff's care providers stated that she could not work.  [AR at 18.]

The ALJ next found that, through her DLI, Plaintiff was unable to do her past relevant work.  [AR at 18.]  Noting that Plaintiff was "closely approaching advanced age",[1] had at least a high school education, could communicate in English, and had transferrable skills from her past relevant work, the ALJ ruled that Plaintiff could still perform other jobs which existed in significant numbers in the national economy, the fifth question in the § 404.1520 analysis.  [AR at 18.]  Brenda Y. Cartwright, the vocational expert ("VE"), [AR at 12,] testified that Plaintiff could work as a Sales Clerk, a semiskilled and light position with 24,320 available positions in the economy, or as a Cashier I, a semiskilled and sedentary position with 13,380 available positions in the economy.  The ALJ therefore concluded that Plaintiff was not under a disability as defined by the Social Security Act at any time from her alleged onset date to her DLI and was not entitled to disability insurance benefits. [AR at 19.]  Plaintiff requested review of the ALJ's decision. On October 15, 2007, the Appeals Council declined review, rendering the ALJ's decision the Commissioner's final decision.

---

[1] Social Security regulations state that: "If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work."  See 20 C.F.R. § 404.1563(d).

4

[AR at 5.]

In the instant Motion, Plaintiff argues that the Commissioner's decision should be reversed because the ALJ: 1) made an incorrect residual functional capacity ("RFC") finding; 2) presented an incomplete hypothetical to the VE and therefore made an erroneous step five finding; and 3) made an improper credibility finding.  Plaintiff's first argument consists of three subissues: the ALJ erred in finding that her panhypopituitarism, thyroid related orbitopathy, and glaucoma were not severe; the ALJ erred in ignoring Plaintiff's mental impairments; and the ALJ should have called a medical expert. Plaintiff's second argument consists of the following subissues: the ALJ failed to include all of her physical impairments and her mental limitations in his hypothetical to the VE; the ALJ erred in relying on the VE's testimony which was inconsistent with the Dictionary of Occupational Titles ("DICOT"); and the ALJ should have found her disabled pursuant to 20 C.F.R. Pt. 404, Subpart P, Appendix 2, § 201.12.

In his Answering Brief, Defendant argues that the ALJ's RFC finding was based on a proper assessment of the medical evidence.  Defendant argues that the ALJ properly discounted Plaintiff's other impairments, which were not as severe as Plaintiff claimed and were stable and controlled at her DLI. Defendant further argues that the hypothetical presented to the

VE was based on medical assumptions that had substantial evidence in the record and that the ALJ did not underestimate Plaintiff's physical restrictions.  Finally, the ALJ properly relied on medical evidence showing that, at the time of Plaintiff's DLI, her impairments were controlled, and therefore he did not err in discrediting Plaintiff's testimony about the extent of her symptoms.

In her Reply, Plaintiff argues that, even if the ALJ found that some of her individual impairments were not severe, he was still required to consider them in combination with her other impairments to determine a holistic RFC.  Further, she argues that her panhypopituitarism, thyroid related orbitopathy, and glaucoma were severe and that the ALJ disregarded evidence in the record that Plaintiff had significant depression.  The ALJ's hypothetical to the VE was also incomplete for the same reasons the RFC finding was incomplete.  In addition, the VE's testimony about the jobs that Plaintiff allegedly could perform was inconsistent with the DICOT and the ALJ failed to address the conflict before relying on the VE's testimony.  Plaintiff asserts that, with her impairments, she could not perform the jobs cited by the VE.  Finally, Plaintiff argues that the ALJ erred in his credibility determination because the medical evidence showed that her symptoms were not controlled and because the ALJ did not follow Social Security Regulations regarding the consideration of

the severity of a claimant's symptoms.

**STANDARD**

## I.   Review of Social Security Decisions

Federal courts review decisions of the Commissioner, acting through the ALJ, to determine whether the decision is supported by substantial evidence or is based on an error of law. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citation and quotation marks omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance[.]" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003) (citation and quotation marks omitted).  Under this standard, if the ALJ's decision is supported by the reasonable inferences from the record and there is evidence supporting more than one rational interpretation, the court must affirm the ALJ's decision.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  The court may not substitute its judgment for the ALJ's.  See id. at 1196. Further, the court must not reverse the ALJ's decision if the errors were harmless.  See Burch, 400 F.3d at 679.  In determining whether the decision is supported by substantial evidence, the court must consider the administrative record as a whole, weighing the evidence supporting the decision as well as

7

the evidence in favor of reversal.  See Verduzco v. Apfel, 188
F.3d 1087, 1089 (9th Cir. 1999).

## II.  Summary Adjudication

The standard for summary adjudication is the same as
the standard for summary judgment.  See, e.g., Rexel, Inc. v.
Rexel Int'l Trading Corp., 540 F. Supp. 2d 1154, 1160 (C.D. Cal.
2008); see also Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir.
2001) (stating that Federal Rule of Civil Procedure 56(c) is the
standard for a motion for summary adjudication).  Summary
adjudication, or summary judgment, is appropriate "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits, show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).

The moving party bears the initial burden of
establishing that there is no genuine issue of material fact.
See MetroPCS, Inc. v. City & County of San Francisco, 400 F.3d
715, 720 (9th Cir. 2005).  There is no genuine issue of material
fact if, based on the record as a whole, a rational trier of fact
could not find for the non-moving party.  See Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
"A material fact is one that may affect the decision, so that the
finding of that fact is relevant and necessary to the
proceedings."  W. Sunview Props., LLC v. Federman, 338 F. Supp.

2d 1106, 1114 (D. Haw. 2004) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

If the moving party meets its burden, the non-moving party must then present evidence that there is a genuine issue of material fact for trial.  In considering a motion for summary judgment, a court must resolve all disputed issues of fact in favor of the non-moving party.  <u>See</u> <u>MetroPCS</u>, 400 F.3d at 720.

## **DISCUSSION**

### I.   **Eligibility for Disability Benefits**

In order to establish that she is eligible for social security disability benefits, Plaintiff had to demonstrate that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  <u>See</u> 42 U.S.C. § 423(d)(1)(A).  The ALJ evaluates a claimant's request for disability benefits based on a five-step analysis.  <u>See</u> 20 C.F.R. § 404.1520; <u>see also</u> <u>Burch</u>, 400 F.3d at 679.

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity".  <u>See</u> 20 C.F.R. §§ 404.1574, 404.1575 (guidelines for "substantial gainful activity").  If the claimant is engaged in substantial gainful activity, she is not disabled.  <u>See</u> § 404.1520(a)(4)(I).

9

Second, the ALJ considers whether the claimant has a medically severe impairment or combination of impairments and whether the impairment meets the duration requirement.[2]  If the claimant does not have a medically severe impairment, or combination of impairments, that meets the duration requirement, she is not disabled.  See § 404.1520(a)(4)(ii).  The medically severe impairment or impairments must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities[.]"  See § 404.1520(c).

The third factor also considers the severity and duration of the claimant's impairments or combination of impairments.  If the claimant's impairment, or combination of impairments, meets or equals one of the impairments listed in Appendix 1 to Subpart P, Regulation 4, and satisfies the duration requirement, she is disabled.  See § 404.1520(a)(4)(iii).

Fourth, if the claimant is still able to perform her "past relevant work"[3] in light of her "residual functional

---

[2] "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  We call this the duration requirement."  20 C.F.R. § 404.1509.

[3] "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 404.1560(b)(1) (citing 20 C.F.R. § 404.1565(a)).

capacity",[4] she is not disabled.   See § 404.1520(a)(4)(iv).

At the final step, the ALJ considers the claimant's residual functional capacity, as well as her age, education, and work experience.   If, in light of these considerations, the claimant can adjust to other work, she is not disabled.   If she cannot make the adjustment, she is disabled.   See § 404.1520(a)(4)(v).   The other work the claimant can perform "must exist in significant numbers in the national economy (either in the region where [she] live[s] or in several regions in the country)."   20 C.F.R. § 404.1560(c)(1).

The claimant bears the burden of establishing disability in steps one through four.   Once the claimant establishes that she cannot perform her past relevant work, the burden shifts to the Commissioner to establish that the claimant can perform other work.   See Burch, 400 F.3d at 679.

## II.  ALJ's Five Step Analysis

Plaintiff argues that the ALJ: 1) made an incorrect RFC finding because he, a) found that her panhypopituitarism, thyroid

---

[4] A claimant's "residual functional capacity" is the most he can do in light of the limitations caused by his impairment or impairments and the associated symptoms, including pain.   See 20 C.F.R. § 404.1545(a)(1).   In determining the claimant's residual functional capacity, the ALJ considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]"   § 404.1545(a)(4).   The ALJ determines a claimant's residual functional capacity based on "all the relevant medical and other evidence" in the record.   See §§ 404.1520(a)(3), 404.1545(a)(3).

related orbitopathy, and glaucoma were not severe, b) failed to consider her mental impairments, and c) failed to call a medical expert; 2) made an erroneous step five finding because he, a) failed to include all of her physical impairments and her mental limitations in his hypothetical to the VE, b) relied on the VE's testimony which was inconsistent with the DICOT, and c) should have found her disabled pursuant to 20 C.F.R. Pt. 404, Subpart P, Appendix 2, § 201.12.; and 3) made an improper credibility finding.  The Court will address Plaintiff's arguments as they apply to the five step analysis.

### A.   **Step One**

The ALJ found that Plaintiff was not engaged in substantial gainful activity from her alleged onset date to her DLI.  [AR at 14.]  Neither party contests this finding.

### B.   **Step Two**

The ALJ found that Plaintiff's skull based meningioma and left eye optic atrophy were severe impairments.  [Id.] Plaintiff argues that the ALJ erred in finding that her panhypopituitarism, thyroid related orbitopathy, and glaucoma were not severe,[5] and that the ALJ should also have considered her depression.  Plaintiff argues that the standard for establishing a severe impairment is not onerous, and that a

_____

[5] Insofar as the ALJ found Plaintiff's impairments in her left eye to be severe, this Court will only address whether Plaintiff's impairments in her right eye were severe.

12

holistic RFC must include consideration of the claimant's

combination of impairments, including non-severe impairments.

> An impairment or combination of impairments may be
> found not severe *only if* the evidence establishes
> a slight abnormality that has no more than a
> minimal effect on an individual's ability to work.
> . . . Step two, then, is a de minimis screening
> device [used] to dispose of groundless claims, and
> an ALJ may find that a claimant lacks a medically
> severe impairment or combination of impairments
> only when his conclusion is "clearly established
> by medical evidence." S.S.R. 85-28. Thus,
> applying our normal standard of review to the
> requirements of step two, we must determine
> whether the ALJ had substantial evidence to find
> that the medical evidence clearly established that
> [the plaintiff] did not have a medically severe
> impairment or combination of impairments.

Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (some

citations & quotation marks omitted) (emphasis and some

alterations in original).

### 1. **Severity of individual impairments**

Panhypopituitarism is a "generalized or particularly

severe hypopituitarism[.]" Dorland's Illustrated Medical

Dictionary 1310 (29th ed. 2000). Hypopituitarism is "a disorder

in which your pituitary gland fails to produce one or more of its

hormones, or doesn't produce enough of them." Mayo Clinic,

Hypopituitarism, http://www.mayoclinic.com/health/

hypopituitarism/DS00479/DSECTION=symptoms (last visited Feb. 10,

2009). It can cause, *inter alia*, fatigue, headaches, muscle

weakness, visual disturbances, joint stiffness, and

lightheadedness when standing. See id. In support of her

argument that the ALJ erred in finding that her
panhypopituitarism was not severe, Plaintiff argues that
Rae Teramoto, M.D., treated her for feeling weak and faint,
dizziness, and headaches.  Dr. Teramoto also prescribed
Prednisone, Synthroid and Tamoxifen, which can have side effects
including dizziness, fatigue, and headaches.  [Mem. in Supp. of
Motion at 16-17 (citing AR at 226-27, 243).]  The ALJ took note
of Plaintiff's treatment regimen and stated that "[t]here was no
indication that more aggressive treatment was required for this
condition."  [AR at 17 (citation omitted).]  Plaintiff argues
that the ALJ's belief that the treatment was conservative is the
only rationale that this Court can consider.  This Court
disagrees.  To the extent that the ALJ found that Plaintiff's
panhypopituitarism was not severe, this Court can affirm that
finding if there was substantial evidence to support a finding
that the medical evidence clearly established that Plaintiff's
panhypopituitarism was only a slight abnormality with a minimal
effect on Plaintiff's ability to work.  See Webb, 433 F.3d at
687.

          Dr. Teramoto did note on July 3, 1992 that Plaintiff
had been feeling weak, dizzy, and like she was going to faint.
[AR 227.]  In addition, on January 24, 1995, she noted that
Plaintiff fatigued easily, and on July 19, 1995, Plaintiff
reported feeling weak at times.  [AR 236, 238.]  On July 15,

1997, Plaintiff reported "occasional fatigue", but otherwise had
no complaints. [AR 243.] Dr. Teramoto, however, did not express
any opinion on how these symptoms affected Plaintiff's ability to
work. Further, there were just as many, if not more entries
noting that Plaintiff was not experiencing these symptoms. [AR
226 (5/27/92 - no headaches or fatigue), 232 (6/10/93 - feeling
well, no fatigue), 233 (12/10/93 & 5/6/94) - no fatigue, 241
(7/24/96 - other than unrelated throbbing in throat, no
complaints); 242 (1/10/97 - no complaints), 244 (12/4/97 - no
fatigue).] Based on this Court's review of the record, the Court
finds that there was substantial evidence to support a finding
that the medical evidence clearly established that Plaintiff's
panhypopituitarism was only a slight abnormality and there is no
indication that it affected her ability to work. The Court
therefore finds that the ALJ did not err in finding that
Plaintiff's panhypopituitarism was not severe.

Plaintiff points out that on December 3, 1997,
Timothy McDevitt, M.D., diagnosed her with "thyroid related
orbitopathy with lower lid scleral show and lagophthalmos both
eyes."[6] [AR 284.] Orbitopathy is a disease affecting the orbit,
"the bony cavity that contains the eyeball". Dorland's

---

[6] The sclera is "the though white outer coat of the eyeball
. . . ." Dorland's Illustrated Medical Dictionary 1610.
Lagophthalmos is "a condition in which the eye cannot be
completely closed." Id. at 957.

Illustrated Medical Dictionary 1273-74.  Thyroid orbitopathy "is an autoimmune condition where your body's immune system is producing factors that stimulate enlargement of the muscles that move the eye.  This can result in bulging of the eyes, retraction of the lids, double vision, decreased vision, and ocular irritation."  North American Neuro-Ophthalmology Society, Thyroid Eye Disease, http://www.nanosweb.org/patient_info/brochures/ThyroidEyeDisease. asp (last visited Feb. 10, 2009).  Plaintiff also points to Dr. McDevitt's June 3, 1998 finding that she had field changes in her right eye because of her glaucoma,[7] and a June 4, 1998 finding by Pierre Pang, M.D., that she had she had "severe insult" to her right eye and uncontrolled open glaucoma.  In fact, she needed to undergo entropion[8] repair on August 19, 1998.  Plaintiff argues that the ALJ should have found that both her thyroid related orbitopathy and her glaucoma were severe impairments.

On the day that Dr. McDevitt diagnosed Plaintiff's orbitopathy, she reported "protrusion of both eyes over an

---

[7] The term "glaucoma" refers to "a group of eye diseases characterized by an increase in intraocular pressure that causes pathologic changes in the optic disk and typical defects in the field of vision."  Dorland's Illustrated Medical Dictionary 749.

[8] Entropion is "the turning inward (inversion) of an edge or margin, as of the margin of the eyelid, with the tarsal cartilage turned inward toward the eyeball[.]"  Dorland's Illustrated Medical Dictionary 602.

16

unknown time period" and "itching from both eyes", which she believed was caused by her recent receipt of a new eye drop treatment.  [AR 284.]  This was only weeks before her DLI and there is no other evidence in the record of the effect of Plaintiff's orbitopathy between the diagnosis and the DLI or closely following her DLI.  This Court therefore finds there was substantial evidence to support a finding that the medical evidence clearly established that Plaintiff's orbitopathy was only a slight abnormality and there is no indication that it affected her ability to work.  The Court finds that the ALJ did not err in finding that Plaintiff's orbitopathy was not a severe impairment.

With regard to Plaintiff's glaucoma, most of the medical evidence supporting the alleged severity of her condition comes from after Plaintiff's DLI.  Medical evidence after Plaintiff's post-DLI can be relevant to the extent that it shows Plaintiff's condition prior to her DLI.  See, e.g., Lingenfelter v. Astrue, 504 F.3d 1028, 1033 & n.3 (9th Cir. 2007) (noting that although the plaintiff had to establish that he was disabled for at least twelve months between his alleged onset date and his DLI, "reports containing observations made after the period for disability are relevant to assess the claimant's disability" (citation and quotation marks omitted)).

Dr. Ishida stated that Plaintiff's vision was 20/25 in

17

her right eye on November 1991. [AR at 137.] On June 15, 1992, he wrote that her vision was between 20/20 and 20/25 and that she appeared to have full visual field. [AR at 138.] On November 12, 1992, he noted that her right eye vision was "preserved". [AR at 139.] His letter dated October 23, 1995 reported the same conditions. [AR at 141.] Similarly, Worldster Lee, M.D., of the Cataract & Retina Center of Hawaii, examined Plaintiff on December 22, 1992. Dr. Lee noted that Plaintiff was being treated with ophthalmic drops for glaucoma. He also noted that her right eye vision was 20/20, but that she had "early arcuate scotoma".[9] [AR at 158.] Her August 17, 1995 and February 13, 1996 examinations, however, did not show much change in her vision. [AR at 159-60.] Plaintiff did report blurring of vision at the February 13, 1996 examination. [AR at 160.]

Dr. McDevitt wrote on June 3, 1998 that Dr. Pang noted on April 28, 1998 that Plaintiff had "recent visual field losses". Dr. McDevitt also noted that Dr. Pang "performed a visual evoked potential and noted marked abnormalities". [AR 286.] Dr. Pang also noted on June 4, 1998 that Plaintiff had "severe insult to the optic nerve in the right eye". [AR 295.] On July 7, 1998, Dr. McDevitt noted that Plaintiff had

_____

[9] Scotoma is "an area of lost or depressed vision within the visual field[.]" Dorland's Illustrated Medical Dictionary 1613. Arcuate scotoma is "a scotoma arising at or near the blind spot and arching inferiorly or superiorly toward the nasal field . . . ." Id.

"irritation in the right eye and entropion of the right lower
lid". [AR 287.] Plaintiff had surgery to repair the entropion
on August 19, 1998. Afterward, Dr. McDevitt reported that
Plaintiff was doing well "with adequate lid level and contour of
the right lower lid." [AR 288.] On November 5, 1998, he noted
that Plaintiff had 20/25 vision in her right eye. [AR 289.]

Thus, even assuming *arguendo* that the seriousness of
Plaintiff's glaucoma condition in mid-1998 was consistent with
her condition at her DLI, this Court findings that Plaintiff's
glaucoma in her right eye was controlled by surgery. In fact,
Plaintiff's right eye vision returned to the same level as her
vision before her alleged onset date. This Court therefore finds
there was substantial evidence to support a finding that the
medical evidence clearly established that Plaintiff's glaucoma in
her right eye was only a slight abnormality and there is no
indication that it affected her ability to work. The Court finds
that the ALJ did not err in finding that Plaintiff's glaucoma was
not a severe impairment.

## 2.   Severity of combined impairments

Plaintiff next argues that the ALJ failed to consider
whether her impairments, in combination, were severe, regardless
of whether each individually was severe. In addition, she argues
that the ALJ failed to consider her mental impairments.

The regulations governing the Social Security

Administration state:

> In determining whether your physical or mental
> impairment or impairments are of a sufficient
> medical severity that such impairment or
> impairments could be the basis of eligibility
> under the law, we will consider the combined
> effect of all of your impairments without regard
> to whether any such impairment, if considered
> separately, would be of sufficient severity.  If
> we do find a medically severe combination of
> impairments, the combined impact of the
> impairments will be considered throughout the
> disability determination process.  If we do not
> find that you have a medically severe combination
> of impairments, we will determine that you are not
> disabled.

20 C.F.R. § 404.1523 (citation omitted).

In reciting the applicable law for step two, the ALJ noted that step two requires a determination whether the combination of the claimant's impairments was severe.  [AR at 13.]  In discussing Plaintiff's case however, the ALJ did not recognize that the combination of Plaintiff's impairments included her impairments which were not considered severe on an individual basis.  In rendering his step two finding, the ALJ only discussed the two impairments which he found to be severe.  [AR at 14.]  The ALJ did discuss Plaintiff's panhypopituitarism, thyroid related orbitopathy, and right eye vision problems in his step four analysis of Plaintiff's RFC.  [AR 15-18.]

In addition, the Court notes that the ALJ's decision makes no mention of any mental impairment that Plaintiff suffered as a result of her depression and other associated symptoms.  In

a November 12, 1990 letter, Dr. Ishida noted that Plaintiff's "main problem" at the time was "significant depression. She is angry and feels lonely, primarily because of changes in her family." She stated that she wanted to see a psychiatrist and Dr. Ishida referred her to Mark Zen, M.D. [AR 439.] Dr. Zen saw her on November 24, 1990, and he stated that Plaintiff had "symptomatology consistent with a Depressive Episode" and a "history consistent with a chronic low grade depressive condition, which has been exacerbated to major depressive proportions at different times in her life." [AR at 445.] They discussed treatment options, but Plaintiff declined antidepressant medications at that time. Dr. Zen scheduled another appointment with her for two weeks later. [Id.] There is no further evidence in the record addressing Plaintiff's depression.

Defendant argues that Plaintiff never alleged a mental impairment and that, in cross-examining the VE, Plaintiff's attorney did not question her about a mental impairment. [Answering Brief at 9.] First, the Court notes that Plaintiff was represented at the administrative hearing by Dina W. Rogers, a non-attorney.[10]  [AR 12.] At the time she requested an

---

[10] The transcripts of the administrative hearings identified Ms. Rogers as Plaintiff's attorney. [AR at 460, 468.] Ms. Rogers, however, identified herself as a "Claimant's Advocate" with the offices of Carl M. Varady, Attorney at Law. [AR at 20-
(continued...)

administrative hearing, she was not represented at all.  [AR 75.]
Further, the mere fact that Plaintiff did not allege a mental
impairment does not mean that the ALJ can disregard medical
evidence in the record establishing such an impairment.

    In <u>Matera v. Astrue</u>, Civ. No. 07-00227 SPK-LEK, the
district judge vacated the Commissioner of the Social Security
Administration's decision denying disability insurance benefits
because the Commissioner "failed to credit or consider . . . the
substantial and significant evidence of Matera's mental
limitations."  [Order Reversing and Remanding Decision of
Commissioner, filed 9/16/08 (dkt. no. 27), at 4.]  The district
judge noted:

> Although Matera – who was proceeding pro se
> during the hearing before the ALJ – does not
> appear to have asserted mental limitations as part
> of her disability, the ALJ's failure to inquire
> about, investigate, and consider such limitations
> also resulted in a faulty RFC determination.  <u>See</u>,
> <u>e.g.</u>, <u>Celaya v. Halter</u>, 332 F.3d 1177, 1183 (9th
> Cir. 2003) ("The ALJ always has a 'special duty to
> fully and fairly develop the record and to assure
> that the claimant's interests are considered[.]");
> <u>Higbee v. Sullivan</u>, 97 F.3d 558, 561 (9th Cir.
> 1992) ("especially where the claimant is not
> represented. . . it is incumbent upon the ALJ to
> scrupulously and conscientiously probe into,
> inquire of, and explore for all the relevant
> facts.").  <u>See also</u> <u>Battles v. Shalala</u>, 36 F.3d
> 43, 45 (8th Cir. 1994) (finding ALJ failed to
> develop record when faced with evidence of a
> mental impairment, stating "the regulations

────────────────

[10](...continued)
22.]  The Hawaii State Bar Association does not list her as a
licensed attorney.

> provide a mandatory procedure to evaluate mental
> impairments, and for examination by a psychiatrist
> or psychologist when there is 'evidence which
> indicates the existence of a mental impairment.'"
> (citing 20 C.F.R. §§ 416.920a and 416.903)).

[Id. at 9.]

In the present case, Plaintiff, like Matera, did not have legal counsel in the administrative proceedings and she did not allege a mental impairment as part of her disability.  The ALJ, however, had a special duty to develop the record by investigating and considering mental limitations suggested in the record.

This Court acknowledges that the evidence of a possible mental impairment in this case is not as clear cut as in Matera. In Matera, the district judge noted that "virtually every other treating and examining professional made similar notations or findings regarding actual or potential mental limitations (e.g., anxiety, depression, neurosis, 'brain dysfunction,' 'brain fog,' 'memory loss,' 'aphasia').  There is other evidence of mental limitations." [Id. at 7 (citations omitted).]  Further, after the ALJ's decision, the Social Security Administration requested that Dr. Robert Horne examine Matera and report on her condition. The evidence was before the Appeals Council in its review of the ALJ's decision.  [Id. at 4 & n.1.]  Dr. Horne diagnosed Plaintiff with, *inter alia*, "Adjustment Disorder With Depression and Anxiety - Severe" [Id. at 5.]  He also opined that Matera was

"clearly unable to function in any vocational setting with her
current symptom picture. . . .  There is no evidence of any
malingering or deceit." [Id. at 6 (citation and quotation marks
omitted).]

In the present case, there are only two reports
indicating a possible mental impairment, but this Court finds
that these reports were sufficient to create an ambiguity about
Plaintiff's mental condition, thus triggering the ALJ's special
duty to develop the record.  See Webb, 433 F.3d at 687 ("The
ALJ's duty to supplement a claimant's record is triggered by
ambiguous evidence, the ALJ's own finding that the record is
inadequate or the ALJ's reliance on an expert's conclusion that
the evidence is ambiguous." (citation omitted)).  Dr. Ishida
noted that Plaintiff had "significant depression" and Dr. Zen
stated that may have a "chronic low grade depressive condition"
that was sometimes "exacerbated to major depressive proportions".
[AR at 439, 445.]  Dr. Zen also indicated that he was going to
see Plaintiff again two weeks later, which indicates a likelihood
that there was more information available if the ALJ had
investigated the matter.

Defendant argues that the ALJ properly rejected the
evidence of any mental impairment because, according to Dr. Zen's
letter, Plaintiff's depression could be controlled with
medication, but Plaintiff refused the recommended antidepressant

medications.  [Answering Brief at 9-10.]  Even assuming *arguendo*
that this would be proper grounds to reject evidence of a mental
impairment,[11] the ALJ did not discuss the possible mental
impairment at all.  This Court cannot speculate that the ALJ
disregarded Plaintiff's mental impairment because Plaintiff
refused the recommended treatment.  <u>See</u> <u>Connett v. Barnhart</u>, 340
F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the
reasons the ALJ asserts." (citing <u>SEC v. Chenery Corp.</u>, 332 U.S.
194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); <u>Pinto v.</u>
<u>Massanari</u>, 249 F.3d 840, 847-48 (9th Cir. 2001)).  This Court
therefore finds that the ALJ erred in failing to investigate and
consider evidence of Plaintiff's potential mental impairment.

        To the extent that the ALJ did not discuss whether
Plaintiff's combined impairments, including her depression, were
severe, this Court finds that the ALJ's step two finding was
erroneous.

### 3.   **Failure to call a Medical Expert**

        In light of this Court's finding that the ALJ's step

---

[11] Defendant cites 20 C.F.R. § 404.1530(a) for the
proposition that, "[i]n order to get benefits, you must follow
treatment prescribed by your physician if this treatment can
restore your ability to work".  [Answering Brief at 9.]
Plaintiff cites S.S.R. 96-7p for the proposition that the ALJ
"must not draw any inferences about an individual's symptoms and
their functional effects from a failure to seek or pursue regular
medical treatment without first considering any explanations
[for] . . . infrequent or irregular medical visits or failure to
seek medical treatment."  [Reply at 8.]

two finding was erroneous, this Court need not address
Plaintiff's argument that the ALJ erred by failing to call a
Medical Expert ("ME").  The Court, however, will address this
argument to provide guidance to the ALJ on remand.

Plaintiff argues that HALLEX[12] I-2-5-34 requires an ALJ
to call a ME if he has questions about the etiology of a disease
and how it affected the claimant's ability to work.  She also
argues that S.S.R. 83-20 states that an ALJ should call an ME to
determine how long a disease may have been disabling.  Defendant
argues that HALLEX is not binding.  Defendant also argues that
the medical evidence supported the ALJ's conclusions and
therefore a ME was not necessary.

The Ninth Circuit has held that:

> HALLEX is strictly an internal Agency manual, with
> no binding legal effect on the Administration or
> this court.  Nevertheless, as an Agency manual,
> HALLEX is "entitled to respect" under Skidmore v.
> Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed.
> 124 (1944), to the extent that it has the "power
> to persuade."  See Christensen v. Harris County,
> 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621
> (2000).

Clark v. Astrue, 529 F.3d 1211, 1216 (9th Cir. 2008) (some
citations omitted).  HALLEX I-2-5-34 states, in pertinent part:

A. When an ALJ May Need to Obtain ME Opinion

An ALJ **may** need to obtain an ME's opinion, either
in testimony at a hearing or in responses to

---

[12] "HALLEX" refers to the Commissioner of Social Security's
Hearings, Appeals, and Litigation Manual.

written interrogatories, when:
. . . .
• the ALJ is determining the degree of
severity of a claimant's physical or mental
impairment;
• the ALJ has reasonable doubt about the
adequacy of the medical record in a case, and
believes that an ME may be able to suggest
additional relevant evidence;
• the medical evidence is conflicting or
confusing, and the ALJ believes an ME may be
able to clarify and explain the evidence or
help resolve a conflict;
• the significance of clinical or laboratory
findings in the record is not clear, and the
ALJ believes an ME may be able to explain the
findings and assist the ALJ in assessing
their clinical significance;
• the ALJ is determining the claimant's
residual functional capacity, e.g., the ALJ
may ask the ME to explain or clarify the
claimant's functional limitations and
abilities as established by the medical
evidence of record;
• the ALJ has a question about the etiology
or course of a disease and how it may affect
the claimant's ability to engage in work
activities at pertinent points in time, e.g.,
the ALJ may ask the ME to explain the nature
of an impairment and identify any medically
contraindicated activities; or
• the ALJ desires expert medical opinion
regarding the onset of an impairment.

(Emphasis added.)  HALLEX I-2-5-34 identified three other

situations where the ALJ must obtain an ME's opinion.  Thus, even

if the ALJ had "a question about the etiology or course of a

disease and how it may affect [Plaintiff's] ability to engage in

work activities at pertinent points in time," HALLEX I-2-5-34 did

not require him to obtain an ME's opinion.

Ruling 83-20 states, in pertinent part:

27

> How long the disease may be determined to have
> existed at a disabling level of severity depends
> on an informed judgment of the facts in the
> particular case.  This judgment, however, must
> have a legitimate medical basis.  At the hearing,
> the administrative law judge (ALJ) should call on
> the services of a medical advisor when onset must
> be inferred.  If there is information in the file
> indicating that additional medical evidence
> concerning onset is available, such evidence
> should be secured before inferences are made.

Soc. Sec. Ruling 83-20 (Nov. 30, 1982).

In the present case, the ALJ found that Plaintiff's conditions could have caused the symptoms she described, but that her testimony about the extent of her symptoms was not credible. The only apparent reason for this adverse credibility finding was that Plaintiff was still able to perform household chores.  At other points in the decision, he found that Plaintiff's conditions were controlled enough so that she could work.  Under these circumstances, it appears that the ALJ made an inference regarding whether and how long Plaintiff's conditions existed at a disabling level of severity.  Pursuant to S.S.R. 83-20, the ALJ should have called upon the services of a ME to assist him in making this inference based on informed judgment and legitimate medical evidence.

C.  **Step Three**

The ALJ found that, through her DLI, Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C.F.R. Part 404,

28

Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). [AR at 14.] He stated that "[n]o treating or examining physician mentioned findings that met or medically equaled the criteria of any listed impairment through" Plaintiff's DLI. [AR at 15.] To the extent that the ALJ failed to consider whether Plaintiff's combined impairments were severe, he also failed to consider whether the combination of her impairments met or equaled a listed impairment. See 20 C.F.R. § 404.1523 (stating that, if the claimant has "a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process"). This Court therefore finds that the ALJ's step three finding was erroneous.

**D.   Step Four**

The ALJ found that, through her DLI, Plaintiff had the RFC to engage in light work that may involve a great amount of walking and/or standing, subject to the following limitations: frequent lifting/carrying of ten pounds, occasionally up to twenty pounds; occasional postural limitations including balancing, stooping, kneeling, crawling, and climbing; and decreased depth perception and visual field. [AR at 15.] The ALJ also found that, through her DLI, Plaintiff was unable to perform her past relevant work. [AR at 18.] The parties do not dispute this portion of the ALJ's step four finding. To the

29

extent that the ALJ failed to consider whether Plaintiff's combined impairments were severe, he also failed to consider whether the combination of her impairments in determining her RFC. <u>See</u> § 404.1523. This Court therefore finds that the ALJ's step four finding was erroneous.

  **E.** <u>**Step Five**</u>

   The ALJ found that, through her DLI, in light of her age, education, work experience, and RFC, Plaintiff had work skills that were transferable to other jobs that existed in significant numbers in the national economy. The ALJ therefore found that Plaintiff was not disabled. [AR at 18-19.] Plaintiff argues that the ALJ's step five finding was erroneous because the ALJ: failed to include all of her physical impairments and her mental limitations in his hypothetical to the VE; relied on the VE's testimony which was inconsistent with the DICOT; and should have found her disabled pursuant to 20 C.F.R. Pt. 404, Subpart P, Appendix 2, § 201.12, which refers to sedentary work.

   An ALJ may properly rely on a VE's response to a hypothetical that "contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record." <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005). However, the ALJ's failure to consider whether Plaintiff's combined impairments were severe means that he may not have included all of Plaintiff's limitations that were

30

credible and supported by substantial evidence in the hypothetical he posed to the VE.  See § 404.1523.  The Court recognizes that an ALJ is not required to include all of a claimant's impairments in the VE's hypothetical, but the ALJ must make specific findings explaining why he excluded impairments from the hypothetical.  See Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).  To the extent that the ALJ did not consider the combination of Plaintiff's impairments, the ALJ failed to make specific findings explaining why he excluded some of her impairments from the hypothetical.  This Court therefore finds that the ALJ's hypothetical was incomplete his reliance on the VE's response thereto was improper.

        Plaintiff next argues that the VE's testimony was inconsistent with the DICOT.  First, the VE testified that Plaintiff could perform the work of a Cashier I (DICOT #211.362-010), which the VE testified was semiskilled and sedentary, and Sales Clerk (DICOT #290.477-014), semiskilled and light.  The DICOT, however, actually classifies the Cashier I position as skilled.  The VE also testified that Plaintiff could perform the Cashier job with her vision limitations because it "does not require depth perception at all."  [AR at 477.]  The Cashier job, however, requires frequent near acuity and occasional accommodation, and the Sales Clerk job requires occasional near and far acuity.  See U.S. Dep't of Labor, Selected

31

Characteristics of Occupations Defined in the Revised Dictionary
of Occupational Titles ("SCODICOT") 07.03.01 & 09.04.02.[13]

Defendant concedes that the VE erred in describing the
Cashier position as semiskilled, but Defendant argues that the
error was harmless.  [Answering Brief at 12.]  The Court notes
that, where the VE's testimony conflicts with the DICOT, the ALJ
must determine if the VE's testimony is reasonable and provide a
basis for relying on the VE's testimony rather than on the
DICOT's information.  See Soc. Sec. Ruling 00-4p (Dec. 4, 2000).
The ALJ noted that the VE's testimony was consistent with the
information in the DICOT.  [AR at 19.]  The ALJ therefore erred
in relying on the VE's testimony, to the extent that it was
inconsistent with the DICOT, without making the findings required
by S.S.R. 00-4p.

In light of this Court's prior findings that the ALJ
erred in failing to consider the combination of Plaintiff's
impairments and in presenting a incomplete hypothetical to the
VE, this Court need not address the effect of the ALJ's improper
reliance on testimony that was inconsistent with the DICOT.
Similarly, this Court need not address Plaintiff's argument that

---

[13] SCODICOT 07.03.01 and 09.04.02 are attached to
Plaintiff's Motion as Exhibit B.  The SCODICOT defines "near
acuity" as "[c]larity of vision at 20 inches or less" and "far
acuity" as "[c]larity of vision at 20 feet or more."  SCODICOT,
App. C, ¶¶ 15-16.  It defines "accommodation" as the
"[a]djustment of lens of eye to bring an object into sharp
focus."  Id. at ¶ 18.

the VE's testimony that she could do the work of a Cashier or
Sales Clerk with her vision limitations and that the ALJ should
have found that she was limited to sedentary work because, on
remand, the ALJ should reconsider these issues in light of
Plaintiff's RFC determined based on the combination of her
impairments.

This Court finds that the ALJ's step five finding was
erroneous.  The Court therefore finds that the ALJ's ruling that
Plaintiff was not disabled as of her DLI was not supported by
substantial evidence and was based on an error of law.

## III. <u>Credibility Determination</u>

Finally, Plaintiff argues that the ALJ made an improper
credibility determination.  The ALJ found that Plaintiff's
"medically determinable impairments could have been reasonably
expected to produce the alleged symptoms, but that [Plaintiff's]
statements concerning the intensity, persistence and limiting
effects of these symptoms are not entirely credible."  [AR at
16.]  In light of this Court's previous findings, it is not
necessary to address this issue.  The Court, however, will
address the issue to provide guidance to the ALJ on remand.

The Ninth Circuit has stated that, "[i]n evaluating the
credibility of pain testimony after a claimant produces objective
medical evidence of an underlying impairment, an ALJ may not
reject a claimant's subjective complaints based solely on a lack

33

of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). Unless there is evidence that the plaintiff is malingering, the ALJ must give clear and convincing reasons for rejecting her pain testimony.  The ALJ must identify what testimony was not credible and what medical evidence disproved the plaintiff's testimony; the ALJ cannot render only general findings.  See id.  The ALJ acknowledged that Plaintiff's medical impairments could have produced her reported symptoms, and the ALJ did not find that Plaintiff was malingering.  The ALJ therefore had to articulate clear and convincing reasons for rejecting Plaintiff's subjective testimony regarding how her conditions limit her daily activities.

        The ALJ noted that Plaintiff claimed that her vision problems affected her depth perception and caused her to fall frequently.  She therefore could not engage in activities including, gardening, driving, sewing, and reading.  The ALJ noted that "[h]owever, she remained able to perform household chores[.]"  [AR at 16 (citing Exhibits 2E, 3E and 7E).]  This appears to be the only reason that the ALJ discredited Plaintiff's testimony about the extent of her impairments.

        Exhibit 3E is Plaintiff's November 29, 2001 Daily Activities Questionnaire.  It states that, in light of her condition, she is extremely limited in cooking, washing, house

34

cleaning, and grocery shopping.  [AR at 105.]  She notes that she
cooks three times a week with her husband's help, and goes
grocery shopping, does laundry, and dusts once a week.  [AR at
106.]  In doing these activities, she needs help with
"identification of some types of produce" and "reading labels on
food products/groceries and cooking directions".  [Id.]  As
Plaintiff notes in the instant Motion, the fact that she does
these chores sporadically throughout the week, at her own pace,
and with her husband's help, does not mean that she can perform
in the workplace on a full-time basis.  [Mem. in Supp. of Motion
at 28-29.]  The Ninth Circuit has stated that "[t]he mere fact
that a plaintiff has carried on certain daily activities, such as
grocery shopping, driving a car, or limited walking for exercise,
does not in any way detract from [his] credibility as to [his]
overall disability.  One does not need to be utterly
incapacitated in order to be disabled."  Webb, 433 F.3d at 688
(citations and quotation marks omitted) (some alterations in
original).  Thus, the ALJ erred to the extent that he relied on
Plaintiff's performance of household chores as the basis for his
adverse credibility determination.  If this was not his reason
for discrediting Plaintiff's testimony about the extent of her
symptoms and limitations, the ALJ erred in failing to identify
specific testimony or medical evidence that contradicted her
testimony.

IV.  **Relief Requested**

        Plaintiff argues that the ALJ's decision should be reversed and she should be awarded all benefits due.  In the alternative, she asks that her case be remanded for a new hearing.  [Mem. in Supp. of Motion at 30.]  This Court cannot find Plaintiff disabled and recommend an immediate award of benefits because the record does not contain facts that "clearly indicate the proper outcome of steps [two, three,] four and five of the disability determination evaluation."  See Vasquez v. Astrue, 547 F.3d 1101, 1110 (9th Cir. 2008).  This Court therefore RECOMMENDS that Plaintiff's case be remanded for further proceedings consistent with this Court's findings herein.

<b>CONCLUSION</b>

        On the basis of the foregoing, this Court HEREBY FINDS AND RECOMMENDS that Plaintiff's Motion for Summary Adjudication, filed September 26, 2008, be GRANTED.  This Court RECOMMENDS that the district judge REVERSE the ALJ's decision and REMAND the case for further proceedings.

        IT IS SO FOUND AND RECOMMENDED.

36

DATED AT HONOLULU, HAWAII, February 13, 2009.



　　/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**LUISA S. GUERRERO V. MICHAEL J. ASTRUE, ETC**; CIVIL NO. 07-00612
HG-LEK; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION
FOR SUMMARY ADJUDICATION